# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DONALD W. DUNLAP,<br><br>                        Plaintiff,<br>     v.<br><br>ANCHORAGE POLICE DEPARTMENT and THE MUNICIPALITY OF ANCHORAGE, and SHAUN HENRY,<br><br>                      Defendants. | Case No. 3:10-cv-00242-SLG |

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Donald Dunlap initiated this action in 2010.[1] The defendants are (1) the Anchorage Police Department ("APD"); (2) the Municipality of Anchorage ("MOA"); and (3) Shaun Henry, an officer with the Anchorage Police Department.[2] The Second Amended Complaint seeks damages for claims arising from Officer Henry's arrest of Mr. Dunlap on December 26, 2007.[3] Before the Court is a Motion for Summary Judgment filed by all the defendants.[4]

### *FACTUAL AND PROCEDURAL BACKGROUND*

The facts, when viewed in the light most favorable to the plaintiff for purposes of this summary judgment motion, are as follows: At approximately 3:00 a.m. on December 26, 2007, Mr. Dunlap was sitting in the driver's seat of his vehicle parked in a vacant lot near the Merrill Field airport in Anchorage when he was approached by

---

[1] Docket 1-1 (Am. Compl.).

[2] *Id.*; Docket 12 (Order Granting Motion to Dismiss).

[3] Docket 24 at 7 ¶52 (Second Am. Compl.)

[4] Docket 36 (Mot.).

Officer Henry.[5]  Officer Henry spoke to Mr. Dunlap and received identification from him.[6] At the time of the stop, it is undisputed that Mr. Dunlap had a loaded rifle on the passenger seat, a machete on the driver's side of the floor of the vehicle, a large fixed-blade knife in the door compartment next to the driver's seat, a loaded pistol in a fanny pack on the passenger seat, and another loaded pistol in between the front passenger seat and the center console.[7]  It is also undisputed that Mr. Dunlap did not have any weapons physically attached to his person at that time.  And it is undisputed that Mr. Dunlap did not notify Officer Henry about any of these weapons at the time of the stop.

Mr. Dunlap asserts that at the time of the stop, the rifle was in plain view of Officer Henry.[8]  Mr. Dunlap claims that "Officer Henry then asked me if I was aware that I was to notify Officers when I had weapons in my vehicle" and Mr. Dunlap "asked Officer Henry if he was referring to the rifle that was in plain view on the passenger seat in my vehicle."[9]  Mr. Dunlap asserts that Officer Henry then ordered Mr. Dunlap out of his vehicle. As Mr. Dunlap got out of the vehicle, Officer Henry observed the fixed-blade knife in the driver's side door pocket and the machete on the floor by the driver's seat.[10]

---

[5] Docket 42-2 at 2 ¶3 (Dunlap Aff.).

[6] *Id.* at ¶4-5.

[7] Docket 38-1 at 1-7 (Resps. to Req. for Admissions); Docket 37-1 at 2 (Ex. A: Off. Henry Arrest Report) (The arrest report also states that in addition to the weapons mentioned above, there were two loaded rifles found in the backseat.  It is not clear whether Mr. Dunlap disputes this, but this factual assertion is not relevant to the legal analysis or determination of this motion.)

[8] Officer Henry maintains the rifle was "substantially hidden." Docket 37 at 4 (Off. Henry Aff.). For purposes of this motion, this Court has assumed the rifle was in the officer's plain view.

[9] Docket 42-2 at 2 ¶ 5-6 (Dunlap Aff.).

[10] Docket 37-1 at 2 (Ex. A: Off. Henry Arrest Report).

Officer Henry then handcuffed Mr. Dunlap and conducted a pat down search.[11] Mr. Dunlap explains that "Officer Henry discovered through his search . . . that [he] had no weapons on [his] person."[12] Mr. Dunlap also maintains that he "informed Officer Henry that [he] was not legally required to notify him of any weapons that were not concealed on [his] person."[13]

Officer Henry then placed Mr. Dunlap in his police vehicle and arrested him for violating AS 11.61.220(a)(1)(A), misconduct involving weapons in the fifth degree. That law makes it a crime when contacted by a peace officer to fail to immediately inform the peace officer of a deadly weapon "that is concealed on the person." Mr. Dunlap repeatedly asked Officer Henry to look in the sun visor of his vehicle where he had placed a copy of this statute, as he maintained then, and continues to maintain, that he had not committed that crime because he had no concealed weapons that were physically attached to his person.[14] Mr. Dunlap's vehicle was then searched and his personal effects photographed.[15]

Mr. Dunlap was then taken before a Magistrate.[16] There, Officer Henry stated he had arrested Mr. Dunlap because he "had failed to inform him of a weapon concealed

---

[11] Docket 42-2 at 3 ¶8 (Dunlap Aff.).

[12] *Id.* at 3 ¶8.

[13] *Id.* at 2-3 ¶8.

[14] *Id.* at 3 ¶12.

[15] *Id.* at 3 ¶13.

[16] *Id.* at 4 ¶15.

on [his] person."[17] The charging document states that "Dunlap failed to notify a police officer of a loaded weapon and refused to notify officer of any other dangerous weapons and loaded firearms in his possession (large hunting knives and a machete)."[18] Bail was set and Mr. Dunlap was remanded to jail.[19] Mr. Dunlap is a former correctional officer and asserts he was "embarrassed and humiliated" by being taken into the jail where some of his former coworkers were on duty.[20] Mr. Dunlap indicates that on February 19, 2008, the charge against him was dismissed.[21]

Mr. Dunlap's complaint initially named Police Chief Mark Mew as a defendant in this action.[22] However, on January 21, 2011, the Court dismissed Chief Mew, because Mr. Dunlap "has alleged no facts against Chief Mew[]" and "officials cannot be held liable for alleged civil rights violations under the theory of respondeat superior."[23] Mr. Dunlap then filed his Second Amended Complaint against the remaining defendants in May 2011.[24] Mr. Dunlap asserts claims under 42 U.S.C. § 1983 arising from the alleged improper search of his vehicle and person in violation of the Fourth Amendment.[25] He

---

[17] *Id.* at 4 ¶15-16 (Dunlap Aff.).

[18] Docket 42-1 (Misdemeanor Compl.).

[19] Docket 42-2 at 4 ¶17 (Dunlap Aff.).

[20] *Id.* at 1; Docket 24 at 5 (Second Am. Compl.).

[21] Docket 42-2 at 5 ¶24 (Dunlap Aff.).

[22] Docket 1-1 at 1 (Am. Compl.).

[23] Docket 12 at 3 (Order Granting Motion to Dismiss).

[24] Docket 24 (Second Am. Compl.).

[25] *Id.* at 2, 7 ¶6, 52; Docket 42 at 1 (Opp.).

also alleges "perjury, false arrest, false imprisonment, and intentional infliction of emotional distress" and malicious prosecution based upon these events.[26] Mr. Dunlap also asserts that the MOA "is liable for negligent hiring, supervision, training, and retention" of Officer Henry.[27]

The defendants filed this Motion for Summary Judgment on March 12, 2012.[28] Mr. Dunlap filed his Response in April 2012 to which the defendants replied in May 2012.[29] Pursuant to Mr. Dunlap's request, this Court granted limited discovery with respect to Mr. Dunlap's direct claims against the MOA and APD.[30] Thereafter, Mr. Dunlap filed a supplemental response in June 2012 together with the deposition transcript of APD Captain William Miller.[31] The defendants filed a supplemental reply in July 2012.[32] Oral argument was not requested and was not necessary for this Court's determination of the motion.

---

[26] Docket 24 at 6 ¶48 (Second Am. Compl.). *See also* Docket 42 at 1 (Opp.).

[27] Docket 24 at 8 ¶60 (Second Am. Compl.); Docket 42 at 2 (Opp.). Mr. Dunlap had also asserted that the Municipal Defendants were vicariously liable for Officer Henry's conduct, but such a claim is precluded under established Supreme Court precedent. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); Docket 48 at 12-2 (Order Granting P.'s Mot. for Relief Under F.R.C.P. 56(d)).

[28] Docket 36 (Mot.).

[29] Docket 42 (Opp.); Docket 46 (Reply).

[30] Docket 48 at 3 (Order Granting P.'s Mot. for Relief under FRCP 56(d)).

[31] Docket 49 (Suppl. Opp.); Docket 49-1 (Dep. of Capt. Miller).

[32] Docket 50 (Suppl. Reply).

## *DISCUSSION*

**I.    Jurisdiction.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.

**II.    Analysis.**

    **A.  Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[33] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[34]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[35] When granting or denying a motion for summary judgment, a court should state on the record its reasons for doing so.[36]

---

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[34] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[35] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[36] Fed. R. Civ. P. 56(a).

**B. Defendant Shaun Henry.**

Mr. Dunlap asserts that Officer Henry violated his constitutional rights and committed intentional torts against him on December 26, 2007.[37] Mr. Dunlap also maintains Officer Henry is liable for malicious prosecution because he sought prosecution of Mr. Dunlap under AS 11.61.220(a)(1)(A), which requires that an undisclosed concealed weapon be "on the person" as an element of the offense, and it is undisputed that Mr. Dunlap did not have any weapons physically attached to his person when stopped by Officer Henry.[38] Officer Henry contends he did not violate the Fourth Amendment or Alaska law, and even if he did violate Mr. Dunlap's rights, he is entitled to qualified immunity.[39]

  *i. Initial Search and Detention.*

Although both parties focus on whether Officer Henry had probable cause to arrest Mr. Dunlap, this Court's analysis begins with Officer Henry's approach to Mr. Dunlap's vehicle and the request for identification. The U.S. Supreme Court's holding in *Terry v. Ohio*[40] is the applicable constitutional standard for that initial contact.

---

[37] Docket 24 at 6 ¶¶43-44, 50 (Second Am. Compl.).

[38] *Id.* at 8 ¶55-56; Docket 42 at 1-2, 8 (Opp.).

[39] Docket 38 at 3 (Mot. Mem.).

[40] 392 U.S. 1 (1968).

In *Terry*, the Supreme Court held that an officer may approach an individual for purposes of investigation when an officer has a "reasonable, articulable suspicion" that a crime has occurred or is about to occur.[41] The Supreme Court reasoned:

> "One general [governmental] interest is. . . effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."[42]

If the officer has a reasonable suspicion of criminal activity, his initial investigation may include a request for identification. The Ninth Circuit has recognized "our cases, as well as those of the Supreme Court, suggest that determining a suspect's identity is an important aspect of police authority under *Terry*."[43]

Officer Henry recounted the circumstances known to him when he approached Mr. Dunlap's vehicle as follows:

> On 12/26/07 at approximately 0259 hours, I observed a green Suzuki Sidekick . . . backed into a parking lot belonging to Merrill Field Airport just off of 15th and Merrill Field Drive. I could see exhaust coming from the vehicle. The vehicle's lights were off. There are no businesses, buildings or any other structures in this parking lot. The lot is primarily used as an access point to the south side of an airport, via secured gates.[44]

---

[41] *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) ("In *Terry*, we held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." (citing to *Terry*, 392 U.S. at 30)).

[42] *Terry*, 392 U.S. at 22.

[43] *U.S. v. Christian*, 356 F.3d 1103, 1106 (9th Cir. 2004) (citing *Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981)); *Adams v. Williams*, 407 U.S. 143, 146 (1972); *U.S. v. Osborn*, 203 F.3d 1176, 1180 (9th Cir. 2000) ("interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure").

[44] Docket 37-1 at 1 (Ex. A: Off. Henry Arrest Report).

These circumstances are such that it was constitutionally permissible for Officer Henry to conduct a *Terry* stop and approach Mr. Dunlap's vehicle and ask him for identification. And it does not appear that Mr. Dunlap takes issue with the constitutionality of this initial detention. In any event, regardless of whether Officer Henry had probable cause to believe a crime had occurred when Officer Henry first saw the rifle in Mr. Dunlap's vehicle, the officer's initial approach to the vehicle and request for identification constituted a constitutionally permissible *Terry* stop.

This Court's analysis then turns to whether it was constitutionally permissible for Officer Henry to conduct an investigatory search.[45] In *Terry*, the Supreme Court held:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.[46]

Thus, after an individual is legally stopped, a police officer may conduct a reasonable weapons search even in the absence of probable cause to arrest. Such a search is constitutionally permissible because "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."[47]

---

[45] *See Terry v. Ohio*, 392 U.S. 1 (1968). *See also Adams v. Williams*, 407 U.S. at 146 ("The purpose of this limited search [for weapons] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law.")

[46] *Terry*, 392 U.S. at 27.

[47] *Id.* at 23.

Moreover, the scope of the Fourth Amendment's protections against unreasonable searches and seizures is diminished in the automobile context.[48] The Supreme Court has "recognized that a motorist's privacy interest in his vehicle is less substantial than in his home."[49] And it has "recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers,"[50] and there is "inordinate risk confronting an officer as he approaches a person seated in an automobile."[51] Thus, once an officer has reasonable suspicion to approach a vehicle, it is constitutionally permissible for the officer to ask the driver to get out of the car and conduct a pat down search for weapons.[52]

In the automobile context, *Terry* and its progeny permit a search for weapons not only of a detained person, but also areas within his immediate control:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing the suspect is dangerous and the suspect may gain immediate control of weapons.[53]

---

[48] *See New York v. Class*, 475 U.S. 106, 112-13 (1986).

[49] *Arizona v. Gant*, 556 U.S. 332, 345 (2009) (citing *New York v. Class*, 475 U.S. at 112-13).

[50] *Michigan v. Long*, 463 U.S. 1032, 1047 (1983).

[51] *Id.* at 1048 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)).

[52] *Arizona v. Johnson*, 555 U.S. 323, 324 (2009).

[53] *Michigan*, 463 U.S. at 1049 (internal citations and quotation marks omitted). *See also U.S. v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990) (police officers had a right to examine a fanny pack sitting on the vehicle – or any other hiding place – where a weapon could be concealed that the suspect could reach if he broke away from officers).

Here again, the rationale is the safety of officers and others: "[W]e have . . . expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed."[54]

Applying these legal principles to the facts as asserted by Mr. Dunlap for purposes of this summary judgment motion, once Officer Henry ascertained that there was a rifle in the passenger seat, it was reasonable for him to believe he was dealing with an armed and dangerous individual. This belief gave him further authority to remove Mr. Dunlap from the vehicle and to conduct a limited weapons search both of Mr. Dunlap and the passenger area within Mr. Dunlap's immediate reach. But when Mr. Dunlap was removed from the vehicle and handcuffed, he was not under arrest. And when Officer Henry discovered the machete and the fixed-blade knife during the limited weapons search, Mr. Dunlap was not under arrest.[55] Rather, he was detained in a constitutionally permissible manner.[56] "As the Supreme Court's and [Ninth Circuit] precedents make clear, not every detention by law enforcement officials amounts to arrest or custody under the Fourth Amendment."[57]

---

[54] *Michigan*, 463 U.S. at 1048.

[55] As Mr. Dunlap admits, he was not informed that he was being placed under arrest until after the limited weapons search had occurred. Docket 42-2 at 3 ¶¶8-9 (Dunlap Aff.).

[56] *See Terry*, 392 U.S. at 26 ("An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different."). *See also* Docket 49-1 at 10 (Dep. of Capt. Miller).

[57] *U.S. v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005) (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979)).

## ii. Subsequent Arrest.

After Officer Henry saw the rifle during his initial detention and then discovered the knife and machete in the limited search, he arrested Mr. Dunlap for a violation of AS 11.61.220(a)(1)(A).[58] This statute provides in relevant part as follows:

> A person commits the crime of misconduct involving weapons in the fifth degree if the person is 21 years of age or older and knowingly possesses a deadly weapon . . . that is concealed on the person, and, when contacted by a peace officer, the person fails to immediately inform the peace officer of that possession . . .

Mr. Dunlap maintains his arrest was unlawful because the rifle on the seat was not concealed – rather, he maintains that it was in Officer Henry's plain view.[59] His argument essentially asserts that Officer Henry did not have probable cause to arrest under the circumstances.[60] For purposes of this motion, the Court has assumed the truth of Mr. Dunlap's version of the facts that the rifle was in plain view. However, Mr. Dunlap was not formally arrested until after the officer discovered two additional concealed weapons – the machete and knife. Therefore, the visibility of the rifle is not determinative, as it is undisputed that Mr. Dunlap failed to inform Officer Henry about these other two weapons and it is also undisputed that these weapons were concealed from the officer's view until the car door was opened while Officer Henry was conducting a constitutionally permissible *Terry* search.[61]

---

[58] Docket 37 at 3 ¶8 (Ex. A: Off. Henry Aff.); Docket 49-1 at 10 (Dep. of Capt. Miller) (Capt. Miller explains the point in the encounter when formal arrest occurred).

[59] Docket 42-2 at 2-3 ¶¶6, 8 (Dunlap Aff.).

[60] *Id.* at 3 ¶¶10, 12.

[61] Docket 38-1 at 4, Nos. 8-10 (Resps. to Req. for Admissions).

Mr. Dunlap also asserts that he did not violate AS 11.61.220(a)(1)(A) because neither the rifle, the machete, nor the knife were physically on his person.[62] He maintains that the statute is "inapplicable to weapons concealed in automobiles."[63] The defendants disagree, and assert that while the statute does not apply to all concealed weapons in automobiles, it does apply to concealed weapons in automobiles that are within a person's reach or within his immediate control.[64] The defendants maintain that those weapons should be considered as "concealed on the person" for purposes of AS 11.61.220(a)(1)(A).[65] However, this Court need not resolve the disputed interpretation of "on the person" for purposes of this statute as Officer Henry clearly had probable cause to arrest Mr. Dunlap according to the facts known to him at the time.

In order for an arrest to be constitutionally permissible under the Fourth Amendment, an officer must have probable cause that an individual committed a crime.[66] The Supreme Court has held that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."[67] Thus, so long as there was probable cause that Mr. Dunlap had committed some crime, no constitutional violation occurred at the time of his arrest.

---

[62] *Id.* at 4, No. 10.

[63] Docket 42 at 8 (Opp.).

[64] Docket 38 at 14 (Mot. Mem.).

[65] *Id.* at 12-14; Docket 42 at 7-8 (Opp.).

[66] *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

[67] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (rejecting "closely-related" doctrine). *See also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) ("Under *Devenpeck*, the subjective reason that [the officer] arrested [the defendant] is irrelevant so long as the available facts suggested that [defendant] was committing a crime.").

Although not cited by either party, this Court finds dispositive the provisions of Anchorage Municipal Ordinance 8.25.020, a provision that was in effect in the Municipality of Anchorage at the time of Mr. Dunlap's arrest. That ordinance provides in relevant part as follows:

> It is unlawful for any person other than a peace officer to knowingly carry concealed about his or her person in any manner:
> 1. A revolver, pistol or other firearm, except a person 21 years of age or older may possess a concealed firearm, provided that … when contacted by a peace officer, the person shall immediately inform the peace officer of that possession; . . .
> 2. A switchblade knife, gravity knife or any knife other than an ordinary folded pocket knife . . ., or a dirk or dagger;
> 3. A slingshot, metal knuckles, club, billy, blackjack or any other instrument or thing the principal purpose or use of which is as a weapon;
> 4. Any other instrument or thing which, because of the manner in which it is concealed and the accompanying circumstances, could reasonably be construed as being kept as a weapon or in order to achieve some violent purpose, and by which injury could be inflicted upon the person of another.[68]

This local ordinance is different from the current state statute, as it requires disclosure to a peace officer of any firearm that is "carr[ied] concealed about his or her person in any manner" and is not restricted to weapons "on the person." Furthermore, unlike the state statute, the local ordinance also flatly prohibits a person "to knowingly carry concealed about his or her person in any manner … any knife other than an ordinary folded pocket knife[.]"

The Alaska Court of Appeals interpreted an earlier version of this municipal ordinance in *Municipality of Anchorage v. Lloyd*.[69] That former ordinance provided that it was unlawful for any person to carry a concealed weapon "about his person in any

---

[68] Anchorage Municipal Code 8.25.020.

[69] 679 P.2d 486 (Alaska App. 1984).

manner." The Court of Appeals reversed the trial court's determination that the ordinance did not apply to a revolver concealed under the driver's seat of a car. The appellate court held the ordinance was to be read "in a fair and reasonable manner, with due regard for its purpose."[70] "It seems reasonably clear that the term 'about his person' was intended to have a broader meaning than "on his person" and was meant to encompass a weapon carried in close proximity to a person and readily accessible for use. . . ."[71] Specifically, the Court of Appeals held that the "plain meaning of the ordinance is sufficiently broad to prohibit the driver or passenger of an automobile from keeping a weapon concealed either on his person or in close proximity to his person, readily available for use."[72]

Even if it is assumed for purposes of this motion that the rifle was in plain view, this Court finds that Officer Henry had probable cause to arrest Mr. Dunlap for violating the municipal ordinance after he discovered the machete and the long-bladed knife in close proximity to Mr. Dunlap, readily available for his use. For at least these two weapons were concealed in the automobile and they were "about his person" according to the Alaska court's interpretation of this phrase in *Municipality of Anchorage v. Lloyd*. Therefore, Officer Henry had probable cause to arrest Mr. Dunlap under the municipal ordinance. The officer's subjective intent to arrest for a violation of AS 11.61.220(A)(1)(a) as evidenced by the Misdemeanor Complaint, is no basis for

---

[70] *Id.* at 487.

[71] *Id.*

[72] *Id.* at 486.

invalidating the arrest.[73]  Because Officer Henry clearly had probable cause to arrest Mr. Dunlap for a violation of Anchorage Municipal Code 8.25.020, it is unnecessary for this Court to determine the issue of Alaska law as to whether or not Officer Henry would have had probable cause to arrest Mr. Dunlap pursuant to the current version of AS 11.61.220(A)(1)(A) under the facts as alleged by Mr. Dunlap.   There is no basis for the imposition of liability on Officer Henry with respect to Mr. Dunlap's arrest because no violation of Mr. Dunlap's constitutional rights occurred. Thus, Officer Henry is entitled to summary judgment on the § 1983 claim as well as the associated tort claims of false arrest, false imprisonment, and intentional infliction of emotional distress related to the arrest.

Mr. Dunlap also contends that Officer Henry is liable for malicious prosecution and perjury because the officer "knowingly submit[ted] false information."[74]  Mr. Dunlap cites to *Gonzalez v. City of Santa Monica*,[75] a case in which the Ninth Circuit held that summary judgment was erroneously granted because under Mr. Gonzalez's version of facts, the officers engaged in malicious prosecution by knowingly submitting false information regarding Mr. Gonzalez's actions during their encounter.[76]  But here, Mr. Dunlap does not allege that Officer Henry lied to the Magistrate about the facts of their encounter.  Instead, Mr. Dunlap maintains that Officer Henry misstated the law when he

---

[73] *See Devenpeck*, 543 U.S. at 153 ("Subjective intent of the arresting officer, *however* it is determined . . . is simply no basis for invalidating an arrest.")(emphasis in original).

[74] Docket 42 at 8-9 (Opp.).

[75] 88 Fed. Appx. 161 (9th Cir. 2004).

[76] *Id.* at 163.

represented that there were weapons "on the person" within the meaning of AS 11.61.220(a)(1)(A).[77] There is no allegation here that Officer Henry submitted false factual information to the Magistrate.[78] Moreover, a requisite element of the tort of malicious prosecution is the "absence of probable cause for the proceeding."[79] Based on the foregoing, Officer Henry is entitled to summary judgment on the malicious prosecution and perjury claims as well

### C. Defendants APD and MOA.

Mr. Dunlap has also asserted claims against the APD and MOA (collectively the "Municipal Defendants"). A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.[80] But liability may be imposed if the "government . . . under color of some official policy, 'causes' an employee to violate another's constitutional rights."[81] For this claim to survive, Mr. Dunlap must identify some unconstitutional policy or custom with which Officer Henry's conduct conformed. Mr. Dunlap maintains that by training officers such as Shawn Henry to make an arrest in the factual circumstances of this case, Mr. Dunlap's constitutional right not to be arrested in the absence of probable cause that a crime was committed was violated. But, as discussed above, Officer Henry had probable cause to arrest under the

---

[77] Docket 42 at 8 (Opp.) ("Officer Henry knowingly submitted false information when he signed the criminal complaint against Mr. Dunlap.")

[78] And "perjury, being a crime and not a tort, is subject to criminal prosecution brought in the interest of the state and not to redress a private wrong." *Bak v. Potter,* 465 Fed. Appx. 705, 706 (9th Cir. 2012).

[79] *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007).

[80] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978).

[81] *Id.*; Docket 48 at 2 (Order Granting Mot. for Relief under Rule 56(d)).

Anchorage Municipal Code so no violation of Mr. Dunlap's constitutional rights occurred. Accordingly, municipal liability may not be imposed and this claim is dismissed.

## *CONCLUSION*

For the foregoing reasons, IT IS ORDERED:

The defendants' Motion for Summary Judgment at Docket 36 is GRANTED in its entirety.

DATED at Anchorage, Alaska this 31st day of October, 2012.

*/s/ Sharon L. Gleason*
United States District Judge