# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DONALD W. DUNLAP,

                Plaintiff,

      v.

ANCHORAGE POLICE
DEPARTMENT, THE MUNICIPALITY
OF ANCHORAGE, and SHAUN
HENRY,

              Defendants.

Case No. 3:10-cv-00242-SLG

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment at Docket 36. The Court previously ruled on that motion in an order issued on October 31, 2012, granting the motion and dismissing Mr. Dunlap's claims.[1] Mr. Dunlap appealed to the Ninth Circuit, which affirmed in part, and reversed and remanded in part.[2] On remand, both parties filed supplemental briefing addressing the Ninth Circuit's memorandum disposition.[3] Defendants' Motion for Summary Judgment at Docket 36 is now back before the Court and ripe for decision. Oral argument was not requested and was not necessary to the determination of the motion.

---

[1] Docket 51 (Order); Docket 52 (Judgment).

[2] Docket 68 (Mem. Disp.).

[3] Docket 71 (Defendants Supp.); Docket 73 (Dunlap Supp.).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts, when viewed in the light most favorable to Mr. Dunlap for purposes of this summary judgment motion, are as follows: at approximately 3:00 a.m. on December 26, 2007, Mr. Dunlap was sitting in the driver's seat of his vehicle parked in a vacant lot near the Merrill Field airport in Anchorage when he was approached by Officer Shaun Henry.[4] Officer Henry spoke to Mr. Dunlap and received identification from him.[5] At the time of the stop, it is undisputed that Mr. Dunlap had a loaded rifle on the passenger seat, a machete on the driver's side floor of the vehicle, a large fixed-blade knife in the door compartment next to the driver's seat, a loaded pistol in a fanny pack on the passenger seat, and another loaded pistol between the front passenger seat and the center console.[6] It is also undisputed that Mr. Dunlap did not have any weapons physically attached to his person at that time. And it is undisputed that Mr. Dunlap did not notify Officer Henry about any of these weapons at the time of the stop.

Mr. Dunlap asserts that at the time of the stop, the loaded rifle on the passenger seat was in Officer Henry's plain view.[7] Mr. Dunlap claims that "Officer Henry then asked me if I was aware that I was to notify Officers when I had weapons in my vehicle" and Mr. Dunlap "asked Officer Henry if he was referring to the rifle that was in plain view on

---

[4] Docket 42-2 (Dunlap Aff.) at 2 ¶3.

[5] *Id.* at ¶4–5.

[6] Docket 38-1 (Resps. to Req. for Admissions) at 1–7; Docket 37-1 (Off. Henry Arrest Report) at 2.

[7] Officer Henry maintains the rifle was "substantially hidden." Docket 37 (Off. Henry Aff.) at 4. For purposes of the motion, the Court has assumed the rifle was in the officer's plain view.

the passenger seat in my vehicle."[8] Officer Henry then ordered Mr. Dunlap out of his vehicle. As Mr. Dunlap got out of the vehicle, Officer Henry observed the fixed-blade knife in the driver's side door pocket and the machete on the floor by the driver's seat.[9] Officer Henry then handcuffed Mr. Dunlap and conducted a pat down search. Mr. Dunlap explains that "Officer Henry discovered through his search . . . that [he] had no weapons on [his] person."[10] Mr. Dunlap also maintains that he "informed Officer Henry that [he] was not legally required to notify him of any weapons that were not concealed on [his] person."[11]

Officer Henry then placed Mr. Dunlap in his police vehicle and arrested him for violating AS 11.61.220(a)(1)(A), misconduct involving weapons in the fifth degree. That law makes it a crime when a person contacted by a peace officer fails to immediately inform the peace officer of a deadly weapon "that is concealed on the person." Mr. Dunlap repeatedly asked Officer Henry to look in the sun visor of his vehicle where he had placed a copy of this statute, as he maintained then, and continues to maintain, that he had not committed that crime because he had no concealed weapons that were physically attached to his person. Mr. Dunlap's vehicle was then searched and his personal effects photographed.[12]

---

[8] Docket 42-2 (Dunlap Aff.) at 2 ¶ 5–6.

[9] Docket 37-1 (Off. Henry Arrest Report) at 2.

[10] Docket 42-2 (Dunlap Aff.) at 3 ¶8.

[11] *Id.* at 2–3 ¶8.

[12] *Id.* at 3.

Mr. Dunlap was taken before a state magistrate judge.[13] There, Officer Henry testified that he had arrested Mr. Dunlap because Mr. Dunlap "had failed to inform him of a weapon concealed on [his] person."[14] The charging document states that "Dunlap failed to notify a police officer of a loaded weapon and refused to notify [the] officer of any other dangerous weapons and loaded firearms in his possession (large hunting knives and a machete)."[15] Bail was set and Mr. Dunlap was remanded to jail.[16] Mr. Dunlap is a former correctional officer and asserts he was "embarrassed and humiliated" by being taken into the jail where some of his former coworkers were on duty.[17] Mr. Dunlap indicates that on February 19, 2008, the charge against him was dismissed.[18]

As relevant on remand, Mr. Dunlap asserts claims under 42 U.S.C. § 1983 for his arrest,[19] and state law tort claims of false arrest/imprisonment and intentional infliction of emotional distress.[20] Mr. Dunlap also asserts that the Municipality of Anchorage (MOA) and the Anchorage Police Department (APD) are "liable for negligent hiring, supervision, training, and retention" of Officer Henry.[21]

---

[13] *Id.* at 4 ¶15.

[14] *Id.* (Dunlap Aff.) at 4 ¶15–16.

[15] Docket 42-1 (Misdemeanor Compl.).

[16] Docket 42-2 (Dunlap Aff.) at 4 ¶17.

[17] *Id.* at 1; Docket 24 (Second Am. Compl.) at 5.

[18] Docket 42-2 (Dunlap Aff.) at 5 ¶24.

[19] *Id.* at 2, 7 ¶6, 52; Docket 42 (Opp'n) at 1.

[20] Docket 24 (Second Am. Compl.) at 6 ¶48; s*ee also* Docket 42 (Opp'n) at 1.

[21] Docket 24 (Second Am. Compl.) at 8 ¶60; Docket 42 (Opp'n) at 2.

Defendants filed their Motion for Summary Judgment on March 12, 2012.[22] The Court granted summary judgment to Defendants, holding that Defendants were entitled to qualified immunity because even under the facts taken in the light most favorable to Mr. Dunlap, a reasonable jury could not find a constitutional violation.[23] The Court held that even if AS 11.61.220(a)(1)(A)—the statute under which Officer Henry had arrested Mr. Dunlap—did not provide probable cause to arrest, other authority did. Specifically, the Court interpreted Anchorage Municipal Ordinance 8.25.020 to prohibit carrying weapons that were concealed "about [Mr. Dunlap's] . . . person" in the vehicle, based on a prior decision from the Alaska Court of Appeals.[24] Because Mr. Dunlap possessed the two concealed knives near his person, the Court concluded that Officer Henry had probable cause to arrest Mr. Dunlap under the municipal ordinance, even though the knives were not directly on Mr. Dunlap's person. The Court granted summary judgment on the remaining claims on the basis that the arrest was lawful.[25]

Mr. Dunlap appealed to the Ninth Circuit. The Ninth Circuit affirmed many of the Court's rulings, but reversed the Court's holding regarding Mr. Dunlap's arrest. It held that based upon a different provision in the municipal ordinance, because Mr. Dunlap was "authorized to possess a firearm," then "he also was permitted to have the weapons found

---

[22] Docket 36 (Mot.).

[23] Docket 51 (Order) at 12–17.

[24] *See Municipality of Anchorage v. Lloyd*, 679 P.2d 486 (Alaska Ct. App. 1984); Docket 51 (Order) at 14–15.

[25] Docket 51 (Order) at 15–18.

in his car because none of them was concealed on his person."[26]  But the Ninth Circuit remanded with instructions to consider whether, pursuant to the United States Supreme Court's recent decision in *Heien v. North Carolina*, the arrest was lawful, and, if not, whether Officer Henry is entitled to qualified immunity.[27]

## DISCUSSION

### I.    Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.

### II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[28]  If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[29]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the

---

[26] Docket 68 (Mem. Disp.) at 4.

[27] 135 S. Ct. 530 (2014); Docket 68 (Mem. Disp.) at 4.

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[29] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986).

non-moving party's favor.[30]  When granting or denying a motion for summary judgment, a court should state in the record its reasons for doing so.[31]

## III.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[32]  The purpose of qualified immunity is to "balance[] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[33]

Government officials are not entitled to qualified immunity if (1) the facts taken in the light most favorable to the plaintiff show the officials' conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[34]  A plaintiff must establish both prongs of the analysis, so that if a court determines that one prong is not met, then qualified immunity applies.  The Supreme Court has "stressed the

---

[30] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[31] FED. R. CIV. P. 56(a).

[32] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[33] *Pearson*, 555 U.S. at 231.

[34] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court notes that recent Supreme Court cases seem to merge these two prongs, and it may be that the law on qualified immunity is evolving. *See, e.g., Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231, but omitting the two-prong configuration).  However, the Ninth Circuit thus far applies the two-prong approach.  *See Garcia v. Cty. of Riverside*, — F.3d —, No. 13-56857, 2016 WL 424707, at *2 (9th Cir. Feb. 3, 2016).  In any event, the outcome of this case is the same regardless of how the qualified immunity test is stated.

importance of resolving immunity questions at the earliest possible stage in litigation."[35]

And the Ninth Circuit has held that summary judgment is appropriate when "the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts."[36]

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[37] The Ninth Circuit has held that "[e]ven absent probable cause, qualified immunity is available if a reasonable police officer *could have* believed that his or her conduct was lawful, in light of the clearly established law and the information the searching officers possessed."[38] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[39]

## IV.    § 1983 Claim Against Officer Henry

### A.    Constitutional Violation

Mr. Dunlap asserts that he was arrested in violation of the Fourth Amendment. In order for an arrest to constitute a valid seizure under the Fourth Amendment, an officer

---

[35] *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

[36] *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004)).

[37] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[38] *Peng*, 335 F.3d at 980 (emphasis added) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991)).

[39] *Messerschmidt v. Millender*, — U.S. —, 132 S. Ct. 1235, 1244 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

must have probable cause to believe that an individual committed a crime.[40]  Here, the Court previously found that Officer Henry had probable cause to arrest Mr. Dunlap based on a violation of Anchorage Municipal Ordinance 8.25.020.  The Ninth Circuit disagreed with this Court's interpretation of that ordinance, but remanded with instructions to consider whether Officer Henry could have made a reasonable mistake of law under the recent United States Supreme Court decision in *Heien v. North Carolina*.[41]

In *Heien*, an officer stopped a vehicle because one of its brake lights was not working, but a court later held that only one functional brake light was required by the applicable state law.  The relevant vehicle code provision required that a car be "equipped with a stop lamp on the rear of the vehicle. . . . The stop lamp may be incorporated into a unit with one or more other rear lamps."  But another subsection of the provision required that "all originally equipped rear lamps" be functional.  The Supreme Court held that the traffic stop did not violate the driver's Fourth Amendment rights because an officer's reasonable mistake of the law is "no less compatible with the concept of reasonable suspicion" than are mistakes of fact.   But the Court added, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or law—must be *objectively* reasonable."[42]  In *Heien*, the Court held that the officer's mistake of law was objectively reasonable because the provision suggested that a "stop lamp" was a type of "rear lamp," and another subsection required that vehicles "have all originally

---

[40] *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

[41] Docket 68 (Mem. Disp.) at 4; 135 S. Ct. 530 (2014).

[42] 135 S. Ct. at 539 (emphasis in original).

equipped rear lamps . . . in good working order." Thus, the officer was objectively reasonable in believing that both brake lights were required to be working, because they were "originally equipped" on the vehicle. The Court also noted that the state's appellate court had not yet construed the provision.[43]

In *Heien*, the Supreme Court was addressing reasonable mistakes of law only in the context of reasonable suspicion to make a traffic stop. But other courts have extended the decision to probable cause to arrest.[44] However, it is an open question whether an officer may make a "reasonable mistake of law" as to a statute that the officer did not rely upon to find probable cause. The Supreme Court has stated that the test for a reasonable mistake of law should be an objective one,[45] and elsewhere has ruled that an officer may have probable cause to make an arrest under a different provision than articulated at the time.[46] But it is unclear whether an arresting officer may make an objectively reasonable mistake of law about a law upon which he did not rely when arresting the suspect.[47] The

---

[43] 135 S. Ct. at 534–36, 539–40.

[44] *J Mack LLC v. Leonard*, No. 2:13–cv–808, 2015 WL 519412, at *9 (S.D. Ohio Feb. 9, 2015) ("[T]his court has no reservation in extending *Heien's* rational to the probable cause analysis, especially given that the Supreme Court's decision is based in part on nineteenth century precedent that it characterized as establishing the proposition that a mistake of law can support a finding of probable cause."); *but see Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1058 (E.D. Wis. 2015) *reconsideration denied in part*, No. 14-cv-333-JPS, 2015 WL 1523891 (E.D. Wis. Apr. 2, 2015) ("[T]he Court has qualms about even applying *Heien* here, given that this is not a reasonable suspicion case.").

[45] *Heien*, 135 S. Ct. at 539.

[46] *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

[47] *See Flint*, 91 F. Supp. 3d at 1058 ("An officer cannot make a reasonable mistake about the law or the facts if he has no knowledge of either.") (citing *Heien*, 135 S. Ct. at 541 (Kagan, J., concurring) ("[T]he government cannot defend an officer's mistaken legal interpretation on the ground that the officer was unaware of . . . the law.")).

Ninth Circuit's memorandum disposition in this case may suggest so, because it has remanded that issue to this Court with instructions to determine *Heien*'s applicability in these circumstances.

At least one district court has applied the "reasonable mistake of law" analysis to a statutory provision that was not the stated basis for the officer's probable cause. In *J Mack LLC v. Leonard*, officers seized synthetic marijuana sold by the plaintiffs. The officers informed the plaintiffs that they were being cited for the sale of harmful intoxicants, but as it turned out synthetic marijuana was not yet illegal in Ohio. The police report also referenced "trafficking in harmful intoxicants in violation of § 2925.32 of the Ohio Revised Code," but the officers admitted that they "did not believe that statute was applicable" at the time of the seizure. Section 2925.32 did not explicitly cover synthetic marijuana, but the defendants asserted that the officers could have made a reasonable mistake of law under that provision. The plaintiffs responded that it would be "impermissible for the Court to consider that statute as a possible basis of a reasonable mistake of law by the Defendants as none of them testified that it was their perceived grounds for seizing the pot at the time the seizure was made." But the district court concluded "that probable cause to seize the pot existed based on an objectively reasonable mistake of law concerning § 2925.32."[48] Thus, in that case, even though none of the officers considered the statute at the time of seizure, the district court held that the officers could nonetheless make a mistake of law as to that statute.

---

[48] *J Mack LLC*, 2015 WL 519412, at *10 (citing *Devenpeck*, 543 U.S. at 153) ("[An officer's] subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause.")).

Applying *Heien* to the situation here, the Court must determine whether Anchorage Municipal Ordinance 8.25.020 is so ambiguous that an officer could make a reasonable mistake of law leading him to arrest the occupant of a vehicle with concealed knives within his reach. The ordinance provided, at the time of the arrest:

A. It is unlawful for any person other than a peace officer to knowingly carry concealed about his or her person in any manner:

    1. A revolver, pistol or other firearm, except a person 21 years of age or older may possess a concealed firearm provided that:

        a. When contacted by a peace officer, the person shall:

            i. Immediately inform the peace officer of that possession; and

            ii. Allow the peace officer to secure the firearm or secure the firearm at the direction of the peace officer, during the duration of the contact;

        . . . .

    2. A switchblade knife, gravity knife or any knife other than an ordinary folded pocket knife . . . .

        . . . .

C. Nothing in this section shall be construed to prohibit an individual who may legally possess a firearm under state and federal law from:

    1. Carrying a weapon in a vehicle so long as the weapon is not also concealed on the person of an occupant of the vehicle; . . . .

Under Part A, it is unlawful for a person to carry, "about his or her person," a concealed knife other than a pocket knife.[49] Part C provides that if a person may legally possess a

---

[49] The Alaska Court of Appeals interpreted an earlier version of this municipal ordinance in *Municipality of Anchorage v. Lloyd*, 679 P.2d 486 (Alaska Ct. App. 1984). That former ordinance provided that it was unlawful for any person to carry a concealed weapon "about his person in any manner." The Court of Appeals opined that "[i]t seem[ed] reasonably clear that the term 'about his person' . . . was intended to have a broader meaning than 'on his person' and was meant to encompass a weapon carried in close proximity to a person and readily accessible for use." *Lloyd*, 679 P.2d at 487. The Court continues to apply the interpretation from its prior order that the knives were "about [the] person."

firearm, that person may carry a "weapon" in the vehicle so long as the weapon is not concealed "on the person."

Here, the facts show that (1) once Officer Henry opened the driver's-side door he viewed the two knives, which had previously been concealed from view, and (2) Mr. Dunlap was legally allowed to possess a firearm under state and federal law. Pursuant to Part A, the concealed possession of the knives would violate the former ordinance. But strictly applying Part C, as interpreted by the Ninth Circuit, Mr. Dunlap was allowed to have any type of weapon in his vehicle because he was legally authorized to possess a firearm under state and federal law. The two knives are "weapons"; thus, Mr. Dunlap lawfully possessed the knives under the Circuit's interpretation of the ordinance, so long as they were not on his person, which it is undisputed they were not. And Mr. Dunlap was under no duty to notify Officer Henry that he possessed these concealed weapons. The Court notes that this interpretation of Part C negates Parts A(2), (3), and (4) of the former ordinance for any person who may legally possess a firearm. While such an interpretation would appear to put officer safety at substantial risk, this appears to be the interpretation that the Ninth Circuit found persuasive.

The Court holds that a reasonable officer could believe that a "weapon" in Part C was only intended to relate to firearms so as not to invalidate large portions of § 8.25.020(A), particularly since the introductory clause of Part C is limited to firearms. In fact, the ordinance has recently been revised so as to remove the distinction between firearms and "weapons," to make clear that the occupant of a vehicle must always notify the officer of any concealed "deadly weapon" in the vehicle, not only of a concealed

firearm.[50]  Moreover, although the only concealed weapons Officer Henry viewed before making his arrest were the knives, Mr. Dunlap's behavior in refusing to discuss other concealed weapons, his statement that he was allowed to have "guns in [his] car," and the rifle in plain view could have given Officer Henry probable cause to believe that Mr. Dunlap was failing to notify him of other concealed firearms in the vehicle in violation of Municipal Ordinance 8.25.020(A)(1)(a)(i) as he, in fact, was.[51]  Accordingly, the Court finds that if *Heien* is applied to the facts here, no reasonable jury could find that Officer Henry violated Mr. Dunlap's constitutional rights.  However, because the applicability of *Heien* to a law that the officer did not consider at the time of arrest is unsettled, the Court will also address whether, even if there was a constitutional violation, Officer Henry is still entitled to qualified immunity because the scope of the applicable laws was not clearly established.[52]

### B.    Clearly Established Law

In order for an arrest to constitute a valid seizure under the Fourth Amendment, an officer must have probable cause to believe that an individual committed a crime.[53]  The

---

[50] *See* Anchorage Municipal Ordinance 8.25.020 (2016).

[51] Mr. Dunlap asserts that Officer Henry could not have made a reasonable mistake of law because he did not subjectively consider the municipal ordinance.  *See* Docket 73 (Dunlap Supp.) at 2–3, 6–8.  This is the same argument made by the plaintiffs in *J Mack LLC*, 2015 WL 519412, at *10–11.  But the officer's subjective belief is not the standard: "[An officer's] subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. Rather, the Supreme Court has explicitly stated that the test laid out in *Heien* is an objective one.  *See* 135 S. Ct. at 534–36, 539–40.

[52] The Court does not address whether Officer Henry could have also made a reasonable mistake of law under AS 11.61.220(a)(1)(A) regarding weapons concealed "on the person."  Rather, the Court addresses that statute in the context of clearly established law, *infra.*

[53] *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Court must decide—assuming the rifle was in plain view for purposes of this motion—whether it has not been clearly established that Officer Henry lacked probable cause to arrest Mr. Dunlap for a violation of AS 11.61.220(a)(1)(A) or Anchorage Municipal Ordinance 8.25.020. Officer Henry had viewed the loaded rifle, machete, and long-bladed knife within Mr. Dunlap's immediate reach in the automobile, and Mr. Dunlap had failed to immediately notify Officer Henry of those weapons. Moreover, Mr. Dunlap was parked in a vacant lot at 3:00 a.m. and refused to alert Officer Henry to any other weapons in the vehicle.[54]

Alaska Statute 11.61.220(a) makes it a crime to "knowingly possess[] a deadly weapon, other than an ordinary pocket knife or a defensive weapon, (A) that is concealed on the person, and, when contacted by a peace officer, . . . fail[] to (i) immediately inform the peace officer of that possession." In essence, with regard to AS 11.61.220(a), Mr. Dunlap asserts that it is clearly established that the term "on the person" does not require a person to immediately disclose to peace officers that the person has concealed weapons within his immediate reach in an automobile.

In *De Nardo v. State*, the defendant was arrested for having a knife in his briefcase pursuant to AS 11.61.220(a).[55] The Alaska Supreme Court held that the knife in the briefcase was "on the person." In dicta, the court cited to the legislative history regarding

---

[54] In addition, there were two other concealed firearms in the vehicle about which Mr. Dunlap failed to notify Officer Henry, in violation of the municipal ordinance. Docket 38-1 (Resps. to Req. for Admissions) at 1–7; Docket 37-1 (Off. Henry Arrest Report) at 2. However, Officer Henry was not aware of the existence of those two firearms at the time he arrested Mr. Dunlap. *See* Docket 37-1 (Off. Henry Arrest Report) at 2.

[55] 819 P.2d 903, 904–06 (Alaska Ct. App. 1991).

the presence of weapons concealed in vehicles. But the facts in *De Nardo* did not present a weapon in a vehicle, so the precise contours of that issue were not before the court. And Mr. Dunlap has directed the Court to no authority holding that a concealed weapon within reach in an automobile is not "on the person." While the Court acknowledges that there is dicta in *De Nardo* that broadly discusses weapons in vehicles, the Court finds that the dicta does not clearly establish that AS 11.61.220 does not permit an officer to arrest a person in a vehicle who fails to warn the officer of concealed weapons that are within direct reach of that person.[56]

With respect to Anchorage Municipal Ordinance 8.25.020, the Court has noted the tension between Parts A and C above. In light of that tension, it was not clearly established at the time of Mr. Dunlap's arrest that the Anchorage Municipal Code permitted a person to carry a concealed machete and hunting knife within his direct reach in his vehicle and not disclose those weapons to a police officer.

Therefore, the Court finds that Officer Henry is entitled to qualified immunity because the "contours '[of state and local law were not] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[57]

---

[56] The Alaska Court of Appeals in *De Nardo* noted that "the legislature explicitly rejected the Subcommission's proposal to prohibit the carrying of concealed weapons in vehicles" and highlighted a legislative comment that "[a] weapon concealed in an automobile is not 'concealed on a person.'" 819 P.2d at 907 (quoting Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 103, 1978 Senate Journal 1399)).

[57] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

## V.     MOA and APD Liability

As the Court has determined that no reasonable jury could find that Officer Henry violated Mr. Dunlap's Fourth Amendment rights, the Court need not address independent MOA and APD liability under § 1983.[58]  Nonetheless, the Court will briefly address these claims.[59]

A municipality may be liable under § 1983 if there is a violation of a federal right and the violation is due to a municipal policy or practice.[60]  But for liability to attach, the municipal policy or practice must be "the moving force of the constitutional violation."[61] For an allegation of failure to train, a plaintiff "must show that (1) he was deprived of a constitutional right; (2) the City had a training policy that 'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact'; and (3) his constitutional injury would have been avoided had the City properly trained those officers."[62]  "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as

---

[58] *See Collins v. City of Harker Heights*, 503 U.S. 115, 120–22 (1992).

[59] The capacity of an entity to be sued is determined "by the law of the state where the court is located." FED. R. CIV. P. 17(b).  "Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or to be sued." *Crull v. City of New Braunfels, Texas*, 267 F. App'x 338, 341 (5th Cir. 2008); *see also Shaw v. State of Ca. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986). APD has been sued as an independent entity in Alaska state court. *See, e.g.*, *Grant v. Anchorage Police Dep't*, 20 P.3d 553 (Alaska 2001).

[60] *City of Harker Heights*, 503 U.S. at 120–22.

[61] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

[62] *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

negligence on the part of the municipal defendant—a much lower standard of fault than deliberate indifference.'"[63] The policy makers must be on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights."[64]

For these claims to survive, Mr. Dunlap must identify an unconstitutional policy or custom with which Officer Henry's conduct conformed. But Mr. Dunlap does not point to any practice or procedure of MOA. Accordingly, his claim against that entity will be dismissed. With respect to APD, Mr. Dunlap maintains it "inappropriately trains its officers to believe that 'on the person' applies to weapons concealed in a vehicle – despite clear and contrary law."[65] Mr. Dunlap points to the deposition testimony of Captain William Miller, who he alleges testified that APD trains its officers to interpret AS 11.61.220 to require the disclosure of any concealed weapons within reach of a person in a vehicle.[66] And Mr. Dunlap asserts that "[l]ike Captain Miller, it is clear that Officer Henry decided to interpret the term 'on his person' in the broadest way possible."[67] Defendants counter that Mr. Dunlap "assumes an incorrect interpretation of AS 11.61.220 and mischaracterizes the testimony of Captain Miller." Defendants assert that Captain Miller testified that "the fact that the weapon is in a vehicle is not determinative; the issue is

---

[63] *Blankenhorn*, 485 F.3d at 485 (quoting *Alexander v. City of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)).

[64] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[65] Docket 49 (Supp. Opp'n to MSJ) at 3; Docket 73 (Dunlap Supp.) at 7.

[66] Docket 49 (Supp. Opp. to MSJ) at 4.

[67] Docket 73 (Dunlap Supp.) at 7.

whether the weapon is concealed and on the person."[68]  But Captain Miller did not explicitly state this; instead, he seemed to testify that there was authority allowing an officer to arrest for undisclosed concealed weapons within reach but could not cite to that authority.[69]  Yet even if Captain Miller did not articulate a precisely accurate knowledge of AS 11.61.220(a)(1)(A), Mr. Dunlap has provided no evidence that APD officials were on notice that a "particular omission in their training program causes city employees to violate citizens' constitutional rights."[70]  Therefore, summary judgment to Defendants on this issue is appropriate.

## VI.  State Law Claims

### A.  False Arrest/Imprisonment

"An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . .  is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused."[71] Discretionary acts are acts "that require personal deliberation, decision, and judgment."[72]

---

[68] Docket 50 (Supp. Reply) at 3.

[69] *See* Docket 49-1 (Miller Depo.) at Tr. 22–28.

[70] *Connick*, 563 U.S. at 61.

[71] *Blankenhorn*, 485 F.3d at 485 (quoting *Alexander*, 29 F.3d at 1367).

[72] *Pauley v. Anchorage Sch. Dist.*, 31 P.3d 1284, 1286 (Alaska 2001) (quoting *Samaniego v. City of Kodiak*, 2 P.3d 78, 83 (Alaska 2000)) (internal quotation marks omitted).

"[A] public official is shielded from liability . . . when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[73]

The decision to arrest Mr. Dunlap was a discretionary decision made within the scope of Officer Henry's employment.[74]  Mr. Dunlap has not alleged that Officer Henry's decision to arrest Mr. Dunlap was made in bad faith or was malicious or corrupt.  Thus, the Court will grant summary judgment on Mr. Dunlap's state law false arrest/imprisonment claim.

## B.  Intentional Infliction of Emotional Distress

The Alaska Supreme Court has held that "an IIED plaintiff must prove that [he] suffered severe emotional distress, i.e. distress of such substantial quality or enduring quantity that no reasonable person in a civilized society should be expected to endure it."[75]   In his Second Amended Complaint, Mr. Dunlap cites embarrassment and humiliation from being seen at the jail by former coworkers, but does not allege any lasting effects from this event.[76]  The Court finds that Mr. Dunlap has not put forward sufficient evidence of severe emotional distress that would allow a reasonable jury to return a

---

[73] *Estate of Logusak ex rel. Logusak v. City of Togiak*, 185 P.3d 103, 109 (Alaska 2008) (quoting *Pauley*, 31 P.3d at 1286).

[74] *See Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 583–84 (Alaska 2007) (holding that making arrest is discretionary and within scope of employment, even when alleged to be unconstitutional).

[75] *State v. Carpenter*, 171 P.3d 41, 59 (Alaska 2007) (internal quotation marks and citations omitted).

[76] Docket 24 (Second Amended Compl.) at 7–8.

verdict in his favor on this claim.[77]   Accordingly, Defendants' motion for summary judgment will be granted as to Mr. Dunlap's IIED claim.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' Motion for Summary Judgment at Docket 36 is GRANTED.

The Clerk of Court is directed to enter a judgment for Defendants.

DATED this 8th day of March, 2016.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[77] Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).